DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant, Keith V. Honey, appeals his classification as a Tier II offender pursuant to the Adam Walsh Act. We affirm.
 {¶ 2} On February 19, 2008, Defendant pled guilty to one charge of abduction, a violation of R.C. 2905.02(A)(2), and to one charge of gross sexual imposition, a violation of R.C. 2907.05(A)(4). Both are felonies of the third degree. The trial court sentenced him to two three-year prison terms to be served concurrently and designated him a Tier II Sexual Offender under the provisions of the Adam Walsh Act (AWA). Defendant timely appealed.
 ASSIGNMENT OF ERROR "The trial court erred when it applied the Adam Walsh Act which was effective after the date of the offense and classified [Defendant] as a Tier II Offender."
 {¶ 3} Defendant's assignment of error is that the AWA is unconstitutional because it violates the Retroactivity Clause of the Ohio Constitution and operates as an ex post facto law in violation of Article I, Section 10 of the United States Constitution. He has also argued that the *Page 2 
residency restrictions imposed by R.C. 2950.034 deprive him of the right to substantive due process in violation of the Fourteenth Amendment to the United States Constitution.
 {¶ 4} This Court recognizes a strong presumption that legislative enactments are constitutional, and before we will declare a statute unconstitutional, "it must appear beyond a reasonable doubt that the legislation and constitutional provision are clearly incapable of coexisting." State v. Gill (1992), 63 Ohio St.3d 53, 55, citingState ex rel. Dickman v. Defenbacher (1955), 164 Ohio St. 142, paragraph one of the syllabus. See, also, State v. Cook (1998), 83 Ohio St.3d 404,409. This Court reviews constitutional challenges de novo. In reG.E.S., 9th Dist, No. 24079, 2008-Ohio-4076, at ¶ 5.
 Retroactivity Challenge {¶ 5} Section 28, Article II of the Ohio Constitution restricts the ability of the legislature to enact retroactive laws. In addition, R.C. 1.48 provides that in construing legislation, "[a] statute is presumed to be prospective in its operation unless expressly made retroactive." This Court applies a two-step analysis to determine whether legislation is unconstitutionally retroactive. In re G.E.S, 2008-Ohio-4076, at ¶ 6, citing Hyle v. Porter, 117 Ohio St.3d 165, 2008-Ohio-542, at ¶ 8. In the first step, we consider whether the legislature has expressed the intention that the statute apply retroactively. Hyle, 2008-Ohio-542, at ¶ 8. If it has not done so, our inquiry ends. Id. at ¶ 9. If it has, then we consider whether the statute is substantive or remedial in nature. Id. at ¶ 8. "The first part of the test determines whether the General Assembly `expressly made [the statute] retroactive,' as required by R.C. 1.48; the second part determines whether it was empowered to do so." Id., quoting, Van Fossen v. Babcock Wilcox Co. (1988),36 Ohio St.3d 100, 106. *Page 3 
 {¶ 6} Consequently, we first consider whether, as required by R.C. 1.48, the General Assembly clearly expressed the intention that the AWA would apply retroactively with respect to adult offenders. "Pursuant to R.C. 1.48, if the statute is silent on the question of its retroactive application, we must apply it prospectively only. In order to overcome the presumption that a statute applies prospectively, a statute must `clearly proclaim' its retroactive application. Text that supports a mere inference of retroactivity is not sufficient to satisfy this standard; we cannot infer retroactivity from suggestive language." (Internal citations omitted.) Hyle, 2008-Ohio-542, at ¶ 10.
 {¶ 7} We are persuaded that the AWA clearly expresses this intention. The AWA imposes registration requirements upon adult sexually oriented offenders "[r]egardless of when * * * the offense was committed." R.C. 2950.04(A)(2). The intention of the legislature that the AWA would apply retroactively to adult offenders is also explicit elsewhere. See, e.g., R.C. 2950.03(A) (describing notice of registration requirements that must be provided to offenders "[r]egardless of when the person committed the sexually oriented offense or child-victim oriented offense[.]"); RC. 2950.031 (requiring reclassification of current registrants under the provisions of the AWA and requiring classification for sexually oriented and child-victim offenders serving a prison sentence prior to the effective date of the AWA); R.C. 2950.033 (extending registration requirements for offenders whose period of registration ended before January 1, 2008); R.C. 2950.04(A)(4) (describing the registration procedures required of offenders who were convicted in another jurisdiction, "[r]egardless of when the sexually oriented offense was committed."); R.C. 2950.06(B)(1) (requiring periodic registration verification for registrants "regardless of when the * * * offense was committed."); R.C. 2950.07(A)(7) (setting forth the dates for commencement of registration for offenders whose duty to register arose *Page 4 
under the version of R.C. Chapter 2950 in effect prior to January 1, 2008); R.C. 2950.10 and R.C. 2950.11 (describing victim and community notification procedures, respectively, without regard to when the offense was committed). As with previous versions of R.C. Chapter 2950, "failure to comply with the registration and verification requirements constitutes a crime regardless of when the underlying offense was committed." Cook, 83 Ohio St.3d at 410.
 {¶ 8} The AWA, therefore, clearly expresses the General Assembly's intention that its provisions with respect to adult offenders would apply retroactively. Cf Cook, 83 Ohio St.3d at 410; In re G.E.S.,2008-Ohio-4076, at ¶ 9. Having concluded that the legislature expressed the intent that the AWA would apply retroactively with respect to adults, this Court turns to the question of whether the relevant provisions of the AWA are substantive or remedial in nature. SeeHyle, 2008-Ohio-542, at ¶ 7; In re G.E.S. at ¶ 10. In considering whether former R.C. Chapter 2950 was unconstitutionally retroactive, the Supreme Court of Ohio explained:
 "A statute is `substantive' if it impairs or takes away vested rights, affects an accrued substantive right, imposes new or additional burdens, duties, obligation, or liabilities as to a past transaction, or creates a new right. Conversely, remedial laws are those affecting only the remedy provided, and include laws that merely substitute a new or more appropriate remedy for the enforcement of an existing right. A purely remedial statute does not violate Section 28, Article II of the Ohio Constitution, even if applied retroactively. Further, while we have recognized the occasional substantive effect, we have found that it is generally true that laws that relate to procedures are ordinarily remedial in nature." (Internal citations omitted.) Cook at 411.
 {¶ 9} In Cook, the Court concluded that the registration and address verification requirements of former R.C. Chapter 2950 were "de minimis procedural requirements that are necessary to achieve the goals of R.C. Chapter 2950," and determined that they were therefore remedial, rather than substantive, in nature. Id. at 412. The Court began its analysis by recognizing that address verification and registration requirements pre-dated the amendments under consideration, and that "[o]nly the frequency and duration of the registration requirements *Page 5 
ha[d] changed." Id. at 411. The Court summarized the relevant enhancements to the registration requirements:
 "Frequency of registration has increased to, in some cases, once every ninety days. Duration has increased from ten years, former R.C. 2950.06, to, in some cases, life. Further, the number of classifications has increased from one (habitual sex offender) under former R.C. 2950.01, to three (sexually oriented offender, habitual sex offender, sexual predator) under R.C. 2950.01." Id.
With these enhancements in mind, the Court concluded that the amended version of R.C. Chapter 2950 did not impose new or additional burdens, duties, obligation, or liabilities with respect to convictions, noting that "`[e]xcept with regard to constitutional protections against ex post facto laws * * * felons have no reasonable right to expect thattheir conduct will never thereafter be made the subject oflegislation'" (Emphasis in original.) Cook at 412, quoting State ex rel.Matz v. Brown (1988), 37 Ohio St.3d 279, 281-82.
 {¶ 10} As in Cook, the starting point for this Court's analysis is the former version of R.C. Chapter 2950. In other words, "in reviewing whether [the] AWA is remedial or substantive in nature, we need only consider the new provisions that were absent from R.C. Chapter 2950 when the Supreme Court issued its decision in Cook" In re G.E.S.,2008-Ohio-4076, at ¶ 10. In In re G.E.S., this Court considered whether the AWA violates the Retroactivity Clause with respect to juvenile offenders whose delinquent acts occurred before January 1, 2008. To the extent that the AWA imposes similar requirements on adult and juvenile offenders, our analysis is aided by this Court's opinion in In reG.E.S.[1] In that case, this Court concluded that neither the duty to register with a sheriff nor the corresponding penalty for failure to do so violated the *Page 6 
Retroactivity Clause. Id. at ¶ 12-13. Because the AW A imposes similar duties on adult and juvenile offenders regardless of when their offense was committed, this Court declines to revisit its conclusion in In reG.E.S., and concludes that these aspects of the AWA comport with the Retroactivity Clause for the reasons set forth in that opinion.
 {¶ 11} This Court has also concluded that the additional content of the registration required by the AWA does not violate the Retroactivity Clause with respect to juvenile offenders:
 "A remedial law may have some substantive effect without altering its overarching remedial purpose. Accordingly, despite the notable increase in disclosures required by a child sex offender under [the] AWA, we do not find that quantum increase unconstitutional. It does not change AWA from a remedial to a substantive law." (Internal citations omitted.) In re G.E.S., 2008-Ohio-4076, at ¶ 16.
The additional content required for registration under the AWA is identical for adult and juvenile offenders. See R.C. 2950.04(B) and (C). As in In re G.E.S., this Court notes that while the AWA requires additional registration information, much of that information is to be maintained by the Bureau of Criminal Identification and Investigation in a non-public database that is accessible only to law enforcement personnel. See R.C. 2950.13. The AWA also limits the information that is public record while maintained by county sheriffs. See R.C. 2950.11(B) and (E). As this Court concluded in In re G.E.S.:
 "While we recognize that AWA has a significant impact upon the lives of sex offenders, that impact does not offend Ohio's prohibition on retroactive laws. Public safety is the driving force behind AWA. We have no reason to doubt that the additional disclosures, uniformly required, properly assist government in its pursuit of public safety. As such, `[w]e cannot conclude that the Retroactivity Clause bans the compilation and dissemination of truthful information that will aid in public safety.'" Id. at ¶ 17, quoting Cook, 83 Ohio St.3d at 413-14.
For the reasons set forth in In re G.E.S., therefore, this Court concludes that the additional registration content of the AWA does not violate the Retroactivity Clause of the Ohio Constitution *Page 7 
with respect to adult offenders. See In re G.E.S.
at ¶ 16-17. As in that case, we do not have occasion to consider whether the community notification components of the AWA are unconstitutional because Defendant, a Tier II offender, is not subject to community notification. See R.C. 2950.11(A) and (F)(1) (describing those persons subject to the community notification provisions of R.C. 2950.11.). Defendant's challenge to the AWA based on the Retroactivity Clause of the Ohio Constitution is without merit.
 Ex Post Facto Law {¶ 12} Defendant also argues that the AWA violates the Constitutional prohibition on ex post facto laws. Specifically, he has argued that (1) the placement of the AWA within Title 29 and the criminal enforcement provisions contained therein indicate that the AWA is punitive in nature and (2) the AWA's classification system, based on the nature of the underlying offense, is a "categorical" scheme that belies the legislature's civil and non-punitive intentions. Defendant has also argued that, even assuming that the AWA was intended to be civil and remedial in nature, the legislature's intention is negated by the punitive consequence of classifications that are dependent solely on the fact of a criminal conviction.
 {¶ 13} Section 10, Article I of the United States Constitution prohibits states from enacting ex post facto laws, or those which "criminalize an act that was innocent when performed or make the punishment for that completed act more burdensome[.]" In re G.E.S.,2008-Ohio-4076, at ¶ 18, citing Cook, 83 Ohio St.3d at 414. Because the Ex Post Facto Clause only applies to criminal statutes, this Court must apply a two-step analysis to Defendant's challenge:
 "First, the court must ask whether the legislature intended for the statute to be civil and non-punitive or criminal and punitive. The Ex Post Facto Clause only prohibits criminal statutes and punitive schemes. Thus, a determination that the legislature intended the statute to be punitive ends the analysis and results in a *Page 8 
finding that the statute is unconstitutional. If, however, the legislature intended for the statute to be civil and non-punitive, then the court must ask whether the statutory scheme is so punitive in nature that its purpose or effect negates the legislature's intent. Accordingly, to withstand the Ex Post Facto Clause, a statute must be civil and non-punitive with regard to both the legislature's intent in enacting it and its actual effect upon enactment." (Emphasis added and internal citations omitted.) In re G.E.S. at ¶ 18.
This Court has previously decided that the legislature expressed the clear intention that the AWA would be civil and non-punitive in nature and that neither the placement of the AWA in Title 29 of the Revised Code nor the criminalization of an offender's failure to register or to verify registration belie the legislature's stated purpose. In reG.E.S. at ¶ 29-33. See, also, Smith v. Doe (2003), 538 U.S. 84, 95.
 {¶ 14} We also rejected the argument that the punitive nature of the AWA is demonstrated by the fact that, with respect to juvenile offenders, it provides for classification of offenders based on the underlying offense alone. In re G.E.S., 2008-Ohio-4076, at ¶ 24-26. We see no reason that this Court's rationale expressed in In re G.E.S. is inapplicable to adult offenders on this point as well. As we explained in that case:
 "[The appellant's] argument assumes, incorrectly, that the potential for recidivism and/or the effectiveness of public notice are the only legitimate non-punitive rationales for classification and registration requirements. We reject that analysis, first because of the inherent difficulty in predicting recidivism in a particular offender and second because notice depends upon knowledge of the offender's presence in a given community. History teaches us that predictions of recidivism are not sufficiently reliable and that discovery of an offender's presence in a community often comes tragically too late. AWA's provisions are directly related to the second problem and seek to enhance law enforcements' awareness of the presence of potential offenders. The utility of such knowledge is obvious and its use during a particular criminal investigation is no more suspect than use of the many data base resources presently available to law enforcement. While the enhancements in AWA cannot guarantee that sexual offenders will be identified before committing another offense, or caught thereafter, such enhancements have a rational and sufficient nexus to community safety and the public good." Id. at ¶ 24. *Page 9 
This Court therefore concludes that, with respect to adult offenders, the General Assembly intended for the AWA to function as a civil, non-punitive scheme. See id.
 {¶ 15} In order to determine whether a statute survives analysis under the Ex Post Facto Clause, this Court must also consider "whether the statutory scheme is so punitive in nature that its purpose or effect negates the legislature's intent." (Emphasis added.) In re G.E.S., 2008 Ohio-4076, at ¶ 18. In doing so, we are mindful that "`only the clearest proof" is sufficient to negate the expressed purpose of the legislature.Doe, 538 U.S. at 92, quoting Hudson v. United States (1997),522 U.S. 93, 100. Our analysis of the character of the AWA is guided by seven factors which, although "`neither exhaustive nor dispositive' * * * are `useful guideposts.'" Doe at 97, quoting United States v. Ward (1980),448 U.S. 242, 249 and Hudson, 522 U.S. at 99. These factors include:
 "Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment-retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned[.]" Kennedy v. Mendoza-Martinez (1963), 372 U.S. 144, 168.
 {¶ 16} This Court has previously determined that consideration of whether the AWA involves an affirmative disability or restraint; whether provisions similar to the registration provisions of the AWA have historically been regarded as a punishment; whether the AWA requires a finding of scienter; whether the behavior to which the AWA applies is already a crime; and whether the AWA serves an alternative non-punitive purpose weigh in favor of the conclusion that the AWA is non-punitive in character. In re G.E.S., 2008-Ohio-4076, at ¶ 28-34, 38. This Court also considered whether the AWA as a whole promotes the traditional aims of *Page 10 
punishment-retribution and deterrence. See id. at ¶ 35. Applying the Ohio Supreme Court's analysis in Cook to this factor, this Court concluded:
 "Our review of AWA convinces us that Cook applies to the vast majority of its provisions, which are targeted to maximize the flow of information to the public. AWA attempts to `solve a problem' by keeping the public well informed of possible sources of danger. We cannot say that any of the additions to the pre-AWA statutory scheme, which are comprised mainly of additional demands for information from offenders, transform the scheme into one that has either a noticeable retributive or deterrent effect." (Internal citations omitted.) Id., quoting Cook, 83 Ohio St.3d at 420.
 {¶ 17} In In re G.E.S., this Court went on to consider the appellant's argument that, with respect to juvenile offenders, the AWA was characterized by emphasis on the traditional goals of punishment-retribution and deterrence. In re G.E.S., 2008-Ohio-4076, at ¶ 36-37. Specifically, the appellant argued that that the AWA "classifies offenders by offense rather than likelihood to reoffend." Id. at ¶ 36. This Court addressed his argument in light of the observation that the appellant "misinterprets AWA." Id. at ¶ 37. Our analysis and discussion of this point in In re G.E.S. did not determine our conclusion that this factor weighed in favor of finding that the character of the AWA is civil and non-punitive, and this Court noted that our analysis of the statute as applied to juvenile offenders did not imply that the AWA is unconstitutional with respect to adult offenders. Id. at ¶ 37 fn2. We see no reason, in light of our discussion in that opinion, to reach a different conclusion when considering these six factors with respect to adult offenders.
 {¶ 18} This Court, therefore, considers the remaining factor: whether the AWA appears excessive in relation to its non-punitive purpose with respect to adult offenders. In Doe, 538 U.S. 84, the United States Supreme Court considered whether the classification of offenders according to their criminal offense rather than a determination of propensity for recidivism indicated that Alaska's sex offender registration law had a punitive character. Id. at 103. The *Page 11 
Court concluded that this factor did not weigh against the characterization of the law as civil and non-punitive. Id. Noting that "[t]he risk of recidivism posed by sex offenders is `frightening and high,'" the Court concluded that "[t]he Ex Post Facto Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences." Id., quoting McKune v. Lile (2002), 536 U.S. 24, 34. In light of the United States Supreme Court's holding in Doe, this Court concludes that the registration and verification provisions of the AWA are not excessive with respect to its non-punitive purpose.
 {¶ 19} The legislature has clearly expressed its intention that the AWA is civil and non-punitive in nature. This Court's consideration of the AWA in light of the factors set forth in Kennedy, 372 U.S. at 168, and Doe, 538 U.S. at 97, leads us to conclude that the AWA is not so punitive in effect as to negate the clearly expressed purpose of the legislature. Defendant's challenge to the AWA as an ex post facto law is without merit.
 Due Process {¶ 20} Defendant's final argument is that the residency restrictions in R.C. 2950.034 violate his rights to due process and to privacy as set forth in the Fourteenth Amendment to the United States Constitution and Sections 1 and 16, Article I, of the Ohio Constitution. Although Defendant objected to his retroactive classification as a Tier II offender, he did not raise the constitutionality of R.C. 2950.034 before the trial court. Specifically, this Court notes that during Defendant's change-of-plea hearing, counsel objected "to the tier II," and the trial court shed further light on the context for the objection by noting that "there is some dispute as to whether or not this change in the law applies to people who are in your situation where the offense is alleged to have been committed before the effective date of the change of the law. * * * *Page 12 
I believe [defense counsel] explained to you that you want to have your appeal in the pipeline[.]" Constitutional errors to which a defendant does not object in the trial court are forfeited for purposes of appeal. State v. McClanahan, 9th Dist. No. 23380, 2007-Ohio-1821, at ¶ 6. This Court declines to address his objection for the first time.
 {¶ 21} Defendant's arguments that the provisions of the AWA violate the Retroactivity Clause of the Ohio Constitution and the Ex Post Facto Clause of the United States Constitution are without merit. This Court declines to address his argument that R.C. 2950.034 deprives him of the right to substantive due process in violation of the Fifth andFourteenth Amendments to the United States Constitution because Defendant forfeited this objection by failing to raise it before the trial court. Defendant's assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30. *Page 13 
Costs taxed to Appellant.
CARR, P. J., DICKINSON, J. CONCUR.
[1] Tier I offenders who are adults must register for fifteen years, while Tier I juvenile offenders must register for ten years. Similarly, adult Tier II offenders must register for twenty-five years while juvenile Tier II offenders must register for twenty years. Tier III offenders, whether juveniles or adults, must register for life. *Page 1