DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} Charles Ralston was convicted of raping his coworker at the French Creek Wastewater Treatment Plant in North Ridgeville. During a bench trial, Mr. Ralston admitted that the two had sexual intercourse during their shift that night, but claimed it was consensual. The trial court convicted him and sentenced him to four years in prison on the rape charge and a concurrent year for one count of gross sexual imposition. Mr. Ralston was classified under the Adam Walsh Act as a Tier III sex offender. Mr. Ralston has appealed, arguing that: (1) his convictions are not supported by sufficient evidence; (2) his convictions are against the manifest weight of the evidence; (3) the indictment was fatally defective because it failed to charge a mens rea for either crime; and (4) the trial court incorrectly applied the Adam Walsh Act retroactively. This Court affirms because: (1) his convictions are supported by sufficient evidence; (2) his convictions are not against the manifest weight of the evidence; (3) the *Page 2 
indictment was not defective; and (4) Mr. Ralston failed to demonstrate plain error in the trial court's retroactive application of the Adam Walsh Act.
 BACKGROUND {¶ 2} During the summer of 2006, Mr. Ralston and his coworker were the only two plant employees working the 4:00 p.m. to 2:00 a.m. shift. According to them, the coworker picked Mr. Ralston up at his home on June 2, 2006, as she always did before their shift. On the way to the plant, the two stopped to buy beer: a six-pack of Heineken for her and Bud Lite for him. They agree the Heineken was to pay her back for driving him to and from work each day. After everyone else left the plant, Mr. Ralston returned to the truck and brought the beer inside. At that point, the testimony begins to differ.
 {¶ 3} Mr. Ralston's coworker testified that, after drinking a number of beers, Mr. Ralston asked why she was always so nervous around him and started kissing her. According to her, he grabbed her arms and told her to lie down. She testified that she told him to stop, that he was hurting her, and that she didn't want to do it, but he proceeded to vaginally rape her. She testified that he had difficulty "jam[ming] it in" and asked her what the problem was. According to her, she rarely engages in sexual intercourse because she has a medical condition that makes it painful and difficult.
 {¶ 4} Both parties agree that, afterward, Mr. Ralston made a comment about her getting an abortion if she were to become pregnant. Mr. Ralston admitted that, when she responded that she didn't believe in abortion for birth control, he commented that, if she got pregnant, she might "end up in an accident on the road." He claimed that he was only joking, but the comment caused his coworker to "flip[] out and los[e] it." He claimed that, after that, he unsuccessfully tried to get her to calm down so that they would not lose their jobs. *Page 3 
 {¶ 5} According to the coworker, when she said she would not have an abortion and tried to use a telephone to call for help, Mr. Ralston became violent, ripping the phone out of her hand and grabbing her by the hair and throat to push her to the floor in the instrumentation room. She testified that he threw her against a fan, breaking its face off. She further testified that, when she was finally able to break free, she positioned herself where she would be seen by security cameras so that he would not touch her again. She then walked out the front door and down to the street, where she flagged down an off-duty police officer.
 {¶ 6} That officer testified that he found the woman staggering around in the road, clearly in distress. Other officers who arrived shortly thereafter described her as very emotional, crying, screaming, and completely unable to talk in a normal tone of voice. Police testified that the instrumentation room at the plant was found in disarray, with papers and debris scattered across the floor and empty beer cartons in the trash.
 SUFFICIENCY {¶ 7} The first part of Mr. Ralston's first assignment of error is that his convictions are not supported by sufficient evidence. Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. State v. Thompkins, 78 Ohio St. 3d 380, 386
(1997); State v. West, 9th Dist. No. 04CA008554, 2005-Ohio-990, at ¶ 33. This Court must determine whether, viewing the evidence in a light most favorable to the prosecution, it would have convinced an average fact finder of Mr. Ralston's guilt beyond a reasonable doubt. State v.Jenks, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).
 {¶ 8} Mr. Ralston was convicted of violating Sections 2907.02(A)(2) and 2907.05(A)(1) of the Ohio Revised Code. Section 2907.02(A)(2) provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other *Page 4 
person to submit by force or threat of force." Under Section 2907.05(A)(1), "[n]o person shall have sexual contact with another, not the spouse of the offender . . . when . . . [he] purposely compels the other person . . . to submit by force or threat of force." In support of this assignment of error, Mr. Ralston has argued that his coworker's account of the incident was "self-serving and conflicting" and "the tenor of her statement to the . . . nurse was one of regret . . . not of being forced or compelled to submit to anything." These arguments do not support his assertion that the evidence was not sufficient to sustain his convictions.
 {¶ 9} Mr. Ralston admitted that he had sexual intercourse with his coworker on the floor at the plant that night. The only question was whether it was consensual or compelled by force. Mr. Ralston's coworker testified that it was not consensual. Viewing the evidence in a light most favorable to the State, it was sufficient to prove that Mr. Ralston forced his coworker to engage in sexual activity with him. To the extent that Mr. Ralston's first assignment of error addresses the sufficiency of the evidence, it is overruled.
 MANIFEST WEIGHT {¶ 10} As part of his first assignment of error, Mr. Ralston has argued that his convictions are against the manifest weight of the evidence. When a defendant argues that his conviction is against the manifest weight of the evidence, this Court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten, 33 Ohio App. 3d 339, 340
(1986).
 {¶ 11} Mr. Ralston's coworker testified that, when he was on top of her, she was "pushing on him and trying to roll out from under him." According to her, the two had never *Page 5 
had any type of sexual or romantic relationship and she was actually scared of him. She also testified that she did not drink beer during her shift that night, but that she saw Mr. Ralston drink several. Mr. Ralston testified that his coworker drank 12 beers during the shift, but each of the police officers and a nurse testified that the coworker did not appear to be intoxicated, nor did anyone smell alcohol on her breath. The nurse who conducted the rape evaluation testified that the woman had a long scratch on her forearm with several smaller scratches around it and a number of small bruises on her arms, thighs, breast, and buttocks. She also testified that she was unable to complete the internal exam because the patient had a condition that made insertion of the speculum quite difficult and painful. The trial court may have reasonably believed the testimony of the coworker over that of Mr. Ralston, who claimed that the two were friends who occasionally engaged in sexual activity. Based on a review of all the evidence, this Court cannot say that the trial court lost its way and created a manifest miscarriage of justice in finding Mr. Ralston guilty of violating Sections 2907.02(A)(2) and 2907.05(A)(1) of the Ohio Revised Code. To the extent that Mr. Ralston's first assignment of error addresses the manifest weight of the evidence, it is overruled.
 DEFECTIVE INDICTMENT {¶ 12} Mr. Ralston's second assignment of error is that the trial court incorrectly convicted him because the indictment failed to charge a mens rea element for the actus reus of each crime. Based on the Ohio Supreme Court's decision in State v. Colon, 118 Ohio St. 3d 26,2008-Ohio-1624, he has argued that the indictment created "structural defects," requiring reversal despite the fact that he did not raise the issue in the trial court. The State has argued that the indictment did contain the appropriate mens rea for each crime. *Page 6 
 {¶ 13} In Colon, the Court held that a robbery indictment was defective because it failed to charge a mens rea and further held that the defendant had not forfeited the issue by failing to raise it in the trial court. Id. at ¶ 19. On a subsequent motion for reconsideration, the Supreme Court clarified and limited its holding. State v.Colon, 119 Ohio St. 3d 204, 2008-Ohio-3749, at ¶ 6-8. The Court stressed that the original decision was based on the fact that the defective indictment "led to errors that `permeate[d] the trial from beginning to end and put into question the reliability of the trial court in serving its function as a vehicle for determination of guilt or innocence.'"Id. at ¶ 8 (quoting Colon, 2008-Ohio-1624, at ¶ 23). Although the Court applied a structural-error analysis in Colon, on reconsideration, it clarified that that was due to the unique facts of that case.Id. Generally, a defective indictment will not lead to the structural errors apparent in Colon. Id. Absent "multiple errors that are inextricably linked to the flawed indictment," if a defendant objects for the first time on appeal to an indictment for failure to charge an essential element of a crime, courts should apply a plain-error analysis. Id. at ¶ 7.
 {¶ 14} In this case, Mr. Ralston has argued, for the first time on appeal, that the indictment omitted the mens rea of recklessness. He has not cited any authority for the proposition that recklessness is the appropriate mens rea for the actus reus of either rape or gross sexual imposition. He has also not argued that the omission resulted in "multiple errors that are inextricably linked to the flawed indictment."Id. Therefore, this Court must apply a plain-error analysis rather than the structural-error analysis championed by Mr. Ralston.
 {¶ 15} "Rule 52(B) of the Ohio Rules of Criminal Procedure permits this Court to take notice of a plain error that affects a substantial right despite that error not having been brought to the attention of the trial court." State v. Lange, 9th Dist. No. 07CA009160, 2007-Ohio-6211, at ¶ 3. In any event, an appellate court will not reverse based on plain error unless it determines *Page 7 
that, "but for the error, the outcome of the trial would clearly have been otherwise." State v. Wogenstahl, 75 Ohio St. 3d 344, 357 (1996). In this case, there is no obvious error that affected Mr. Ralston's substantial rights.
 {¶ 16} The indictment charged Mr. Ralston with engaging in "sexual conduct" with his coworker and "purposely compell[ing her] to submit by force or threat of force, in violation of Section 2907.02(A)(2) of the Ohio Revised Code, a Felony of the First Degree. . . ." It also charged him with one count of gross sexual imposition for having "sexual contact with" his coworker, who was not his spouse, "having purposely compelled [her] to submit by force or threat of force, in violation of Section 2907.05(A)(1) of the Ohio Revised Code, a Felony of the Fourth Degree. . . ."
 {¶ 17} Section 2907.02(A)(2) provides that, "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Section 2907.05(A)(1) provides that, "[n]o person shall have sexual contact with another, not the spouse of the offender . . . when . . . [he] purposely compels the other person . . . to submit by force or threat of force." Each count of the indictment tracked the statutory language for the crime charged. This Court does not agree with Mr. Ralston's argument that the mens rea of recklessness applied to the actus reus for either count. See Starcher v. Eberlin, 7th Dist. No. 08BE19, 2008-Ohio-5042, at ¶ 16-17. The statutory language indicates that "purposely" applies to both the conduct and the result. State v. Solether, 6th Dist. No. WD-07-053, 2008-Ohio-4738, at ¶ 90 (quoting R.C. 2907.02(A)(2)). Thus, "a defendant is guilty of rape [or gross sexual imposition if] he purposely compels the victim to submit" to the sexual activity described by the statute. Id. Mr. Ralston's second assignment of error is overruled. *Page 8 
 ADAM WALSH ACT {¶ 18} Mr. Ralston's third assignment of error is that the trial court improperly classified him as a Tier III sex offender under the Adam Walsh Act because the offense occurred before the effective date of the Act. If a defendant fails to object to constitutional errors in the trial court, they are forfeited for purposes of appeal. State v.Honey, 9th Dist. No. 08CA0018-M, 2008-Ohio-4943, at ¶ 20. Mr. Ralston admits that he did not object to the classification in the trial court, but has argued plain error on appeal. Pursuant to Rule 52(B) of the Ohio Rules of Criminal Procedure, this Court may take notice of an obvious error that affects a substantial right, even if the defendant has failed to preserve the error via a timely objection in the trial court.Lange, 2007-Ohio-6211, at ¶ 3; see also Crim. R. 52(B).
 {¶ 19} Mr. Ralston has argued that the retroactive application of the law violates both the United States and Ohio Constitutions. He has argued that the Act was intended to be punitive in nature and, alternatively, that the punitive effect of the law negates any contrary legislative intent. These arguments were addressed by this Court in the recent case of State v. Honey, 9th Dist. No. 08CA0018-M, 2008-Ohio-4943.
 {¶ 20} The defendant in Honey, made similar arguments challenging the constitutionality of the Adam Walsh Act as applied to an offense committed before the effective date of the Act. In that case, this Court held that "the additional registration content of the [Adam Walsh Act] does not violate the Retroactivity Clause of the Ohio Constitution with respect to adult offenders." Id. at ¶ 11. This Court determined that the Act was intended "to function as a civil, non-punitive scheme" and that "the registration and verification provisions . . . are not excessive with respect to its non-punitive purpose." Id. at ¶ 14, ¶ 18; seeid. at ¶ 12-19 (noting that the placement of the Act within Title 29 of the Ohio Revised Code, the classification system based *Page 9 
on the offense, and the consequences of classification do not violate the Ex Post Facto Clause). Therefore, this Court held that the Act did not violate the United States Constitution's prohibition on ex post facto laws. Id. at ¶ 19. Based on the reasoning of this Court inState v. Honey, Mr. Ralston has failed to demonstrate plain error under Rule 52(B) of the Ohio Rules of Criminal Procedure. His third assignment of error is overruled.
 CONCLUSION {¶ 21} Mr. Ralston's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. The indictment did not fail to charge a mens rea element for the actus reus of each count, and Mr. Ralston failed to demonstrate plain error in the trial court's retroactive application of the Adam Walsh Act. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30. *Page 10 
Costs taxed to appellant.
 MOORE, P. J. SLABY, J. CONCUR *Page 1