DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} A jury convicted Gregory Fisher of raping Kelly Hickin while they were patients in a drug and alcohol detoxification program. The trial court classified him as a tier III sex offender and sentenced him to six years in prison. Mr. Fisher has argued: (1) that the evidence was insufficient to support his conviction; (2) that his conviction is against the manifest weight of the evidence; (3) that the prosecutor engaged in misconduct when she commented on his failure to testify; (4) that his lawyer was ineffective; (5) that the court's retroactive application of the Adam Walsh Act was unconstitutional; and (6) that the State failed to try him within the time permitted under the Interstate Agreement on Detainers. This Court affirms because there was sufficient evidence to convict Mr. Fisher of rape, his conviction is not against the manifest weight of the evidence, the prosecutor's closing argument was not improper, his lawyer was not *Page 2 
ineffective, his classification as a sexual offender was not unconstitutional, and he was brought to trial within the Interstate Agreement on Detainers deadline.
 FACTS {¶ 2} On July 29, 2006, Ms. Hickin checked herself into St. Ignatia, an inpatient drug and alcohol program at St. Thomas Hospital. It placed her in a private room, which was set up as a regular hospital room. She was instructed not to close her door, but there was a curtain she could draw for privacy. Nurses came by from time to time to monitor her condition and administer medications that assisted with the detoxification process. Ms. Hickin spent most of her time in her room, except during meals, which were served in a common room that was directly across the hall from her room.
 {¶ 3} According to Ms. Hickin, around 1:00 a.m. on the morning of July 31, Mr. Fisher entered her room, stuffed a blanket in her mouth, pulled her to the end of her bed, turned her over, and raped her vaginally. When it was over, he told her not to tell anyone or he would kill her. Ms. Hickin remained in her room the rest of the night and did not tell anyone what had happened. Later that day, however, she learned from another patient that Mr. Fisher had checked out of the program. She then felt safe enough to tell a nurse about the encounter. She was taken to the sexual assault examination unit, where she was physically examined and spoke with Detective Frank Harrah of the Akron Detective Bureau. After the examination, she returned to her room and completed the detoxification program.
 {¶ 4} According to Detective Harrah, following Ms. Hickin's report, he asked Mr. Fisher about the encounter, but Mr. Fisher denied that he had had sex with anyone in the program. After DNA results confirmed that Mr. Fisher's sperm was found in Ms. Hickin's vagina, the Grand Jury indicted him for rape. Detective Harrah attempted to locate Mr. Fisher *Page 3 
again and eventually learned that he was incarcerated in Michigan. Upon receipt of the indictment, Mr. Fisher perfected a written demand for prosecution and asked to be returned to Ohio for trial under the Interstate Agreement on Detainers. On January 17, 2008, a jury convicted him of rape. The trial court classified him as a tier III sex offender and sentenced him to six years in prison. Mr. Fisher has appealed, assigning five errors.
 SUFFICIENCY {¶ 5} Mr. Fisher's first assignment of error is that there was insufficient evidence to support his conviction and that the jury's verdict is against the manifest weight of the evidence. "Inasmuch as a court cannot weigh the evidence unless there is evidence to weigh," this Court will first consider his argument that his conviction is not supported by sufficient evidence. Whitaker v. M.T. Automotive Inc., 9th Dist. No. 21836, 2007-Ohio-7057, at ¶ 13.
 {¶ 6} Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. State v.Thompkins, 78 Ohio St. 3d 380, 386 (1997); State v. West, 9th Dist. No. 04CA008554, 2005-Ohio-990, at ¶ 33. This Court must determine whether, viewing the evidence in a light most favorable to the prosecution, it would have convinced an average fact finder of Mr. Fisher's guilt beyond a reasonable doubt. State v. Jenks, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).
 {¶ 7} Section 2907.02(A)(2) of the Ohio Revised Code provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Mr. Fisher has argued that the State failed to establish that he used force or the threat of force to facilitate sexual intercourse with Ms. Hickin. According to him, the evidence established that it was a consensual encounter that Ms. Hickin later regretted. He has argued that putting a sexual partner into position is not necessarily an indication of rape *Page 4 
and that any statements he made after the sexual conduct occurred could not establish threat of force.
 {¶ 8} "A defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit." State v. Schaim, 65 Ohio St. 3d 51, paragraph one of the syllabus (1992). Section 2901.01(A)(1) defines force as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901(A)(1).
 {¶ 9} Ms. Hickin testified that she first saw Mr. Fisher while she was eating a meal in the common room. He told her that she was "a pretty thing," that "[he had] something for [her]," and that "[he wanted] to show [her] what [he had] for [her]." His comments made her uncomfortable, so she spent most of her time alone in her room. Around 1:00 a.m. during her second night in the program, however, she woke up to somebody walking into her room. Because she had just woken up, she was not exactly sure what was going, but, because she had left the light on in her bathroom, she could see that the person was Mr. Fisher. He came around the curtain, pulled her down to the end of the bed, shoved a blanket in her mouth, turned her over, shoved her legs apart, and put his penis in her vagina. Although she was on her stomach, the blanket stayed in her mouth because Mr. Fisher had her arm pinned "back and [was] kind of leaning on me with his arm forcing me down so that I couldn't get back up." She further testified that "he had [her] body pressed down [with] his arm" and that, because she had been medicated, she was not "physically strong enough to do anything about it." Viewing her testimony in a light most favorable to the prosecution, it was sufficient to establish that Mr. Fisher physically restrained her. *Page 5 
 {¶ 10} Mr. Fisher has argued that the State had to prove not only that the sexual conduct was against Ms. Hickin's will, but that he knew it was against her will. Assuming Mr. Fisher is correct, the statement he made after it was over that, "if [Ms. Hickin] told anybody he would kill [her]," demonstrated that he knew the sexual conduct had been against her will. This Court, therefore, concludes that the evidence was sufficient to establish that Mr. Fisher compelled Ms. Hickin to submit to sexual conduct by force. To the extent Mr. Fisher's first assignment of error is that his conviction is not supported by sufficient evidence, it is overruled.
 MANIFEST WEIGHT {¶ 11} Mr. Fisher has also argued that his conviction is against the manifest weight of the evidence. When a defendant argues that his conviction is against the manifest weight of the evidence, this Court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Otten, 33 Ohio App. 3d 339, 340 (1986).
 {¶ 12} Mr. Fisher has argued that Ms. Hickin was not credible. She told the first nurse she reported the attack to that he said that, "if she told anyone, he would be . . . waiting outside . . . for her because [there was] more where that came from." She told another nurse, however, that he said he would kill her if she told anyone. She told the first nurse that he stuffed a towel in her mouth, but told others that it was a blanket. She told the first nurse that he had held a black box against the back of her neck, but did not repeat that to the other nurses or Detective Harrah. He has also noted that she did not report the attack until many hours after it happened, even though there was a nurse call button on her bed. *Page 6 
 {¶ 13} Mr. Fisher has also argued that there was no conclusive physical evidence of rape. Although Ms. Hickin had some bruises on her body, the nurse who examined her testified that it was possible that she got them some other way. The nurse also said that her findings could be consistent with consensual sex.
 {¶ 14} The nurse who recorded Ms. Hickin's allegedly inconsistent statements did not testify. Only her report was in the record. Having observed Ms. Hickin and heard her testimony, the jury may have believed that the nurse incorrectly reported what Ms. Hickin had told her. It may also have considered any inconsistencies insignificant. Based on a review of all the evidence, this Court cannot say that the jury lost its way and created a manifest miscarriage of justice in finding that Mr. Fisher raped Ms. Hickin, in violation of Section 2907.02(A)(2). To the extent that Mr. Fisher's first assignment of error is that his conviction is against the manifest weight of the evidence, it is overruled.
 PROSECUTORIAL MISCONDUCT {¶ 15} Mr. Fisher's second assignment of error is that the prosecutor improperly commented on his failure to testify in her closing argument. He has asserted that her argument improperly shifted the burden of proof on the issue of consent to him. "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." State v. Smith, 14 Ohio St. 3d 13, 14 (1984).
 {¶ 16} "[I]t is improper for a prosecutor to comment on the defendant's failure to testify." State v. Twyford, 94 Ohio St. 3d 340,355 (2002). "The question is `whether the language used wasmanifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" State v. Webb, *Page 7 70 Ohio St. 3d 325, 328-29 (1994) (emphasis in original) (quotingKnowles v. United States, 224 F.2d 168, 170 (10th Cir. 1955)).
 {¶ 17} During his opening statement, Mr. Fisher's lawyer conceded that Mr. Fisher had had sex with Ms. Hickin. He explained, however, that "[w]hat we're disputing is that that sex came about by [force]. . . . [O]ur position is that this was consensual sex between two people in the detox center." After Mr. Fisher did not present any evidence on that issue, the prosecutor noted in her closing argument that the jury had "heard nothing from that witness stand to tell you that this was consensual." She argued that the evidence of rape was "uncontroverted" and repeated that "you have heard not one word that this was consensual. That was just something that you heard in opening statement. Nothing tells us that this was a consensual sexual act."
 {¶ 18} After Mr. Fisher's lawyer argued that "[t]he issue here is consensual versus force" and suggested that Ms. Hickin and Mr. Fisher had engaged in "an affair," the prosecutor rebutted that, "[t]hey can stand here and talk to you about theories. Evidence is entirely another thing. And evidence is what you have to consider. You cannot consider consent as a defense. And I say that because there was no evidence presented to you that this was a consensual encounter."
 {¶ 19} Mr. Fisher has argued that the prosecutor's statements were improper because his lawyer never told the jury that he would be testifying. He has also argued that her statement that he did not prove consent impermissibly shifted the burden of proof to him and improperly emphasized his failure to take the stand. The State has argued that Mr. Fisher waived all but plain error because he did not object to the prosecutor's statements. This Court concludes that, even if Mr. Fisher preserved his argument, it is without merit.
 {¶ 20} "A reference by the prosecutor in closing argument to uncontradicted evidence is not a comment on the accused's failure to testify, where the comment is directed to the strength *Page 8 
of the state's evidence and not to the silence of the accused, and the jury is instructed not to consider the accused's failure to testify for any purpose." State v. Ferguson, 5 Ohio St. 3d 160, paragraph one of the syllabus (1983). In addition, "[t]he prosecution is not prevented from commenting upon the failure of the defense to offer evidence in support of its case." State v. Williams, 23 Ohio St. 3d 16, 20 (1986) (citingLockett v. Ohio, 438 U.S. 586, 595 (1978)). It may challenge "the weight of the evidence offered in support of an exculpatory theory presented by the defense." State v. Collins, 89 Ohio St. 3d 524, 528 (2000). "Such comments do not imply that the burden of proof has shifted to the defense, nor do they necessarily constitute a penalty on the defendant's exercise of his Fifth Amendment right to remain silent." Id. at 527-28.
 {¶ 21} In Ferguson, the issue was "whether the prosecutor's comment in closing argument that the state's evidence is `uncontradicted' is a comment on the accused's failure to take the stand." Ferguson,5 Ohio St. 3d at 162. The prosecutor had stated: "Force, ladies and gentlemen. This was not a consensual affair. I believe the evidence is quite clear on that. We have nothing to contradict. There is no evidence that's come forth in this trial that I know of, to contradict. . . . [T]here were only two people in that apartment, and there is no evidence to contradict that." Id. The Supreme Court of Ohio determined that "a prosecutor is allowed to comment upon the relative strength of the state's case, which includes commenting upon the fact that the state's case has not been rebutted." Id. at 163. Because that was "precisely the nature of the prosecutor's comments," and the jury had been "instructed not to consider the [defendant's] failure to testify for any purpose," the Court concluded that "the prosecutor's comments were permissible matters for closing argument." Id.
 {¶ 22} Mr. Fisher argued that the sexual conduct was consensual, but did not present any evidence in support of his theory. While the prosecutor noted that there was no evidence of *Page 9 
consent, she did not directly comment on Mr. Fisher's failure to testify. The trial court also instructed the jury that "[t]he fact that the defendant did not testify must not be considered for any purpose." This Court, therefore, concludes that the prosecutor's statements were not improper. See State v. Twyford, 94 Ohio St. 3d 340, 356 (2002) ("The prosecutor merely pointed out differences between what defense counsel said in their opening statement versus what the evidence proved.") Mr. Fisher's second assignment of error is overruled. INEFFECTIVE ASSISTANCE {¶ 23} Mr. Fisher's third assignment of error is that his lawyer was ineffective because he did not object to the prosecutor's argument regarding his failure to testify. He has also argued that his lawyer should have objected to leading questions the prosecutor asked on redirect of Ms. Hickin, Detective Harrah, and the nurse who examined Ms. Hickin in the sexual assault examination unit.
 {¶ 24} To succeed on his argument, Mr. Fisher would have to show that his lawyer's performance was deficient and that he was prejudiced by the deficiency. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish that his lawyer was deficient, he would have to show that his lawyer's representation "fell below an objective standard of reasonableness." Id. at 688. To establish prejudice, he would have to show that there is a reasonable probability that, but for his lawyer's errors, the result of his trial would have been different. Id. at 694;State v. Bradley, 42 Ohio St. 3d 136, paragraph three of the syllabus (1989). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.
 {¶ 25} Having determined that the prosecutor did not engage in misconduct, this Court concludes that Mr. Fisher's lawyer was not ineffective for failing to object during her closing *Page 10 
argument. Regarding the prosecutor's alleged use of leading questions, in State v. Jackson, 92 Ohio St. 3d 436, 449 (2001), the Supreme Court of Ohio held that, because "it is within the trial court's discretion to allow leading questions on direct examination[,] . . . the failure to object to any leading questions [does not] constitute[] ineffective assistance of counsel." Mr. Fisher's third assignment of error is overruled.
 ADAM WALSH ACT {¶ 26} Mr. Fisher's fourth assignment of error is that the trial court violated the prohibition on ex post facto laws when it retroactively applied Ohio's Adam Walsh Act and classified him as a tier III sex offender. He has also argued that the court's application of the law violated the Ohio Constitution's prohibition on retroactive laws. InState v. Honey, 9th Dist. No. 08CA0018-M, 2008-Ohio-4943, at ¶ 11, 19, this Court rejected those same arguments in a similar situation. See also State v. Ralston, 9th Dist. No. 08CA009384, 2008-Ohio-6347, at ¶ 20 (rejecting similar arguments on the basis of Honey). Mr. Fisher's fourth assignment of error is overruled.
 INTERSTATE AGREEMENT ON DETAINERS {¶ 27} Mr. Fisher's fifth assignment of error is that the trial court should have dismissed the indictment because he was not tried within 180 days after his request for final disposition, as required under the Interstate Agreement on Detainers. Section 2963.30 of the Ohio Revised Code, which codified the agreement, "requires a disposition of a detainer within 180 days after service of a proper request for a final disposition." State v. King, 9th Dist. No. 2449, 1989 WL 77233 at *1 (July 12, 1989). "If a defendant is not brought to trial within the time limits prescribed by the [agreement], the indictment . . . must be dismissed with prejudice." State v. Moreland, 9th Dist. No. 01CA007883,2002 WL 570253 at *2 (citing R.C. 2963.30 Art. V(c)). *Page 11 
The court may, however, "for good cause shown in open court, . . . grant any necessary or reasonable continuance." R.C. 2963.30 Art. III(a). A defendant may also waive the time limit. Moreland, 2002 WL 570253 at *4.
 {¶ 28} On June 12, 2007, Mr. Fisher served the State with his request for disposition. At his arraignment on October 10, 2007, the trial court set his pretrial for October 22, 2007. On October 22, the court continued the pretrial until November 5, 2007, "upon the request of [Mr. Fisher] . . . for good cause shown." On November 5, the court continued the pretrial again at Mr. Fisher's request. On November 19, the court let Mr. Fisher's lawyer withdraw and continued the pretrial again to allow Mr. Fisher time to confer with new counsel. On December 3, the court set Mr. Fisher's trial for January 15, 2008.
 {¶ 29} From the time Mr. Fisher served his request for disposition to the time of his original pretrial date, 132 days elapsed. The pretrial was continued at Mr. Fisher's request several times and was finally held on December 3, 2007. Following the pretrial, 43 more days elapsed before Mr. Fisher's trial. Accordingly, if the continuances that Mr. Fisher requested tolled the 180-day deadline, his trial was timely under Section 2963.30.
 {¶ 30} Mr. Fisher has argued that there is no evidence that he asked for the pretrial to be continued. He has noted that the record does not contain any written motions asking for a continuance and that there are no transcripts indicating that he made an oral motion in open court.
 {¶ 31} At the beginning of trial, the court considered a pro se motion to dismiss that Mr. Fisher had sent to the prosecutor, but had not filed. The court heard arguments from the parties concerning whether the 180-day deadline had run. Mr. Fisher did not argue that he had not requested the pretrial continuances and conceded that the time between the withdrawal of his *Page 12 
first lawyer and the appointment of his second lawyer should not be charged to the State. Accordingly, he has forfeited his argument that he did not ask for the pretrial to be continued. His fifth assignment of error is overruled.
 CONCLUSION {¶ 32} Mr. Fisher's conviction for rape is supported by sufficient evidence and is not against the manifest weight of the evidence. The prosecutor did not make inappropriate statements during her closing argument and his counsel was not ineffective for failing to object. His classification as a tier III sex offender was constitutional and the trial court correctly denied his motion to dismiss the indictment under the Interstate Agreement on Detainers. The judgment of the Summit County Common Pleas Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30. *Page 13 
Costs taxed to Appellant.
 CARR, P. J. WHITMORE, J. CONCUR. *Page 1