OPINION
{¶ 1} David Turner appeals following his conviction on sixteen counts of pandering obscenity involving a minor and eight counts of gross sexual imposition involving a minor. After a bench trial, Turner was found guilty of all pending charges. The court sentenced Turner to six years *Page 2 
on each count of pandering and five years on each gross sexual imposition count, with the terms on all counts to run concurrently with each other. Turner was also designated a Tier II sex offender and he is required to register for twenty-five years, with in-person verification every 180 days.
 {¶ 2} Turner argues that the trial court should have granted his motion to suppress, because the affidavit supporting the issuance of the warrant was not based on probable cause. Turner also contends that the State failed to prove consent for the search. In addition, Turner raises defects in the indictment and a lack of sufficient evidence to support a finding that he engaged in sexual contact or that the materials in question were obscene. For the reasons that follow, the judgment of the trial court is affirmed.
 I {¶ 3} In July 2007, David Turner and his wife, Diane, owned eight computers. Three of the computers, plus a laptop, were kept in an unlocked office on the first floor of the house. One computer in the office, a Macintosh, was used primarily by David. However, Diane also accessed the computer occasionally.
 {¶ 4} On the evening of July 5, 2006, David was out of town on business. Some time prior to this evening, David and Diane had given a friend some used personal digital assistants (PDAs). While talking to the friend on the night of July 5, Diane learned that the friend had found a video on David's PDA of two men engaged in homosexual sex. A website was listed at the end of the video, and when Diane accessed the website, she found that it was not a pornographic website, but appeared to be a website that sold software for making movies on the computer. *Page 3 
 {¶ 5} Diane then went to the Turner's home office and looked at a Macintosh computer, which contained all the family finances. Diana had used this computer before, and the computer contained a folder entitled "Diane's stuff." When Diane clicked on the icon for the folder, she discovered about twenty files. Some were movies, and at least one was an audio file. The first file that Diane opened was an audio file, and it was a recording of their eleven-year-old son, J.T., crying. Diane then opened several more files and discovered a movie of David bringing J.T. into the office and instructing him to remove his clothing. David then told J.T. to bend over a step stool, and paddled him. Another file showed J.T. naked and bent over David's knee, while David applied some type of clear oil onto J.T.'s buttocks. David then caressed J.T.'s buttocks, and paddled him. After accessing a third video showing their son being paddled while completely naked, Diane called a child abuse hotline, and then called the Montgomery County Sheriff's Office. Diane was extremely upset about the content of the videos, and was also frightened, because her husband could access the computer remotely and had the ability to delete files.
 {¶ 6} When Deputy Chaney of the Montgomery County Sheriff's Office arrived, Diane invited him to come into the house. Diane was visibly upset and was also concerned about the possibility of losing the information on the computer. Diane took Chaney to the computer room, opened up one of the files and began to show him a video. Diane identified the persons on the video as her husband and older son. Chaney watched the video for a few moments and asked Diane to stop the video because it was disturbing and he thought it might be criminal in nature. Chaney contacted his supervisor and asked him to come to the scene. *Page 4 
 {¶ 7} After Chaney's supervisor arrived, the officers did not conduct a search of the home; they simply talked with Diane. Diane signed a consent form allowing the officers to take a computer tower. Although the consent form did not specify which computer was involved, the officers took the hard drive of the Macintosh computer.[1]
 {¶ 8} The police subsequently obtained search warrants for additional computers and computer-type retaining items like thumb drives and memory cards. The affidavit for the search warrants was based on information that Diane provided, which was quite detailed. David Turner was initially indicted on four counts of pandering obscenity and two counts of gross sexual imposition of a minor, to which he entered a not guilty plea. A reindictment was issued in August 2007, presenting additional counts.
 {¶ 9} The trial court overruled Turner's motion to suppress and amended motion to suppress in November 2007. After initially deciding to plead no contest to all the charges, Turner withdrew his plea and agreed to have the matter tried to the court. He was found guilty as charged, and was sentenced accordingly.
 II {¶ 10} In his first assignment of error, Turner contends that the evidence should have been suppressed, because the affidavit in support of the search warrant failed to provide probable cause. *Page 5 
 {¶ 11} The standards for reviewing decisions on motions to suppress are well established. In ruling on a motion to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." State v. Retherford (1994), 93 Ohio App.3d 586, 592,639 N.E.2d 498 (citation omitted). Accordingly, when we review suppression decisions, "we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." Id. Accord, State v. Mackey (2001),141 Ohio App.3d 604, 609-10, 752 N.E.2d 350.
 {¶ 12} In the specific context of probable cause in affidavits submitted in support of search warrants:
 {¶ 13} "`The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" State v. George (1989), 45 Ohio St.3d 325,544 N.E.2d 640, at paragraph one of the syllabus, quoting from Illinois v.Gates (1983), 462 U.S. 213, 238-39, 103 S.Ct. 2317, 76 L.Ed.2d 527.
 {¶ 14} In George, the Ohio Supreme Court also observed that:
 {¶ 15} "In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo *Page 6 
determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." 45 Ohio St.3d 325, at paragraph two of the syllabus.
 {¶ 16} After reviewing the evidence in this case, we conclude that the magistrate had a substantial basis for concluding that probable cause existed. The affidavit contains detailed information from Diane Turner. In fact, the affidavit contains considerably more detail than we have recounted above, and indicates a greater than fair probability that evidence of criminal activity would be found in one or more computers or computer storage devices in the Turner home.
 {¶ 17} The information also came from a reliable source — Turner's wife. "Information coming from a citizen eyewitness is presumed credible and reliable, and supplies a basis for a finding of probable cause in compliance with Gates. * * * Such individuals do not expect any gain or concession in exchange for the information they give to the police, and are less likely to produce false or untrustworthy information."State v. Garner (1995), 74 Ohio St.3d 49, 63, 1995-Ohio-168,656 N.E.2d 623.
 {¶ 18} Turner argues that Diane's information was not reliable because she was not a "neutral" citizen reporting a crime, but was instead involved with the subject of the report. Turner suggests that spouses are not neutral or disinterested when reporting on their *Page 7 
spouses. While we agree that circumstances could exist in which a spouse's ulterior motive is at issue, this is not such a case. Deputy Chaney testified that Diane was visibly shaken when he arrived, and there is nothing to suggest that she was motivated by anything other than the discovery of very troubling information.
 {¶ 19} Accordingly, the first assignment of error is overruled.
 III {¶ 20} In the second assignment of error, Turner contends that the trial court erred prejudicially and violated the Fourth Amendment when it denied the motion to suppress, because the State allegedly failed to prove that Diane "consented" to the search of the computer hard drive where the material was recovered. Turner argues that the State failed to develop the evidence at the suppression hearing, because three computer towers were in the home office, and the State did not specify which tower contained the objectionable material. David also contends that Diane's testimony never mentioned which tower she accessed to view the offending videos. However, we do not agree that any error occurred.
 {¶ 21} "To rely on the consent exception of the warrant requirement, the state must show by `clear and positive' evidence that the consent was `freely and voluntarily' given." State v. Posey (1988),40 Ohio St.3d 420, 427, 534 N.E.2d 61 (citation omitted). "The voluntariness of the consent is determined from the totality of the circumstances."State v. Patterson, Montgomery App. No. 20977, 2006-Ohio-1422, at ¶ 26
(citation omitted).
 {¶ 22} The voluntariness of Diane's consent is not at issue, as her testimony clearly indicates that she asked the police to come, invited them into the house, and freely consented to the seizure of the computer. Furthermore, there was no dispute about the *Page 8 
identify of the computer and what was seized. Diane specifically stated that the videos were on the Macintosh computer, in a file marked "Diane's stuff." Diane also stated that the hard drive that was removed belonged to the Macintosh computer that been referred to in her testimony. Furthermore, as we noted, the terms "computer tower" and "hard drive" were used interchangeably and all referred to the same item. Accordingly, the second assignment of error is overruled.
 IV {¶ 23} In the third assignment of error, Turner contends that the newly enacted reporting provisions for sex offenders violate several constitutional provisions in a variety of ways. The act in question is Ohio's implementation of the Adam Walsh Act, which became effective as part of Senate Bill 10 in January 2008.
 {¶ 24} The State argues that Turner has waived any challenges to S. B. 10, because he did not raise these matters in the trial court. We have stressed many times that failure to challenge the constitutionality of statutes or their application, which are apparent at the time of trial, "`constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal.'" State v. Desbiens, Montgomery App. No. 22489, 2008-Ohio-3375, at ¶ 17, quoting from State v. Awan (1986), 22 Ohio St.3d 120,489 N.E.2d 277, syllabus. Although we may still consider waived arguments on a plain error analysis, we decline to do so in this case. The third assignment of error, therefore, is overruled.
 V *Page 9 {¶ 25} In the fourth assignment of error, Turner contends that his convictions must be reversed because of fatal flaws in the indictment. Specifically, Turner claims that the mens rea element of "purposeful" behavior is missing from the gross sexual imposition counts, and that the mens rea element of "recklessness" is missing from the various counts alleging pandering, making the indictments defective.
 {¶ 26} Crim. R. 7(A) requires the use of indictments in felony cases, except where the defendant waives the right to an indictment. Regarding the language of the indictment, Crim R. 7(B) provides that:
 {¶ 27} "The statement may be made in ordinary and concise language without technical averments or allegations not essential to be proved. The statement may be in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged."
 {¶ 28} R.C. 2901.21 further provides, in pertinent part, that:
 {¶ 29} "(A) * * * a person is not guilty of an offense unless both of the following apply:
 {¶ 30} "(1) The person's liability is based on conduct that includes either a voluntary act, or an omission to perform an act or duty that the person is capable of performing;
 {¶ 31} "(2) The person has the requisite degree of culpability for each element as to which a culpable mental state is specified by the section defining the offense.
 {¶ 32} "(B) When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the *Page 10 
offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense."
 {¶ 33} The Ohio Supreme Court recently issued a decision dealing with the need for a mens rea statement in indictments, and whether error in this regard is structural or simply subject to a plain error analysis. See State v. Colon, 118 Ohio St.3d 26, 28, 2008-Ohio-1624,885 N.E.2d 917. In Colon, the Ohio Supreme Court considered whether an indictment was defective, where the indictment contained the statutory language for robbery under R.C. 2911.02(A)(2), but "omitted a mens rea element for the actus reus element stated in subsection (2): `Inflict, attempt to inflict, or threaten to inflict physical harm on another.'" Id. at ¶ 10.
 {¶ 34} The Ohio Supreme Court noted in Colon that R.C. 2911.02 does not specify a mens rea element. However, the court stressed that:
 {¶ 35} "the mental state of the offender is a part of every criminal offense in Ohio, except those that plainly impose strict liability. * * * Under R.C. 2901.21(A)(2), in order to be found guilty of a criminal offense, a person must have `the requisite degree of culpability for each element as to which a culpable mental state is specified by the section defining the offense.'
 {¶ 36} "R.C. 2901.21(B) addresses both strict-liability statutes and those statutes, like the robbery statute (R.C. 2911.02), that do not expressly state a culpable mental state. * * * R.C. 2901.21(B) states that `[w]hen the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be *Page 11 
guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense.'
 {¶ 37} "Thus, `recklessness is the catchall culpable mental state for criminal statutes that fail to mention any degree of culpability, except for strict liability statutes, where the accused's mental state is irrelevant.'" 2008-Ohio-1624, at ¶ 10-13.
 {¶ 38} In Colon, the Ohio Supreme Court also concluded that the defect in the indictment was structural, and could be raised for the first time on appeal. The court then reversed the defendant's conviction, because the State had treated the offense as one of strict liability, rather than as an offense requiring recklessness. Id. at ¶ 28-32. In its syllabus, the court stated that:
 {¶ 39} "When an indictment fails to charge a mens rea element of a crime and the defendant fails to raise that defect in the trial court, the defendant has not waived the defect in the indictment." Id. at syllabus.
 {¶ 40} Subsequently, on reconsideration, the Ohio Supreme Court limited the syllabus in Colon to the facts of the case. See State v.Colon, 119 Ohio St.3d 204, 205, 2008-Ohio-3749, 893 N.E.2d 169, at ¶ 8. The court noted that the case involved a unique situation, in which the defective indictment had resulted in multiple violations of the defendant's rights. The court, therefore, concluded that a structural error analysis would not be appropriate in cases where multiple errors are not inextricably linked to the flawed indictment. 2008-Ohio-3749, at ¶ 7. Instead, in those situations, a plain-error analysis should be used if a defendant has failed to object to the indictment. Id.
 {¶ 41} In the present case, Turner failed to object to the form of the indictment. *Page 12 
However, a plain error analysis applies, because there is no evidence of other violations linked to the alleged defect in the indictments. The doctrine of plain error "requires a demonstration of prejudice," in contrast to "the doctrine of structural error, under which prejudice is presumed." State v. Johnson, Montgomery App. No. 22090, 2008-Ohio-5769, at ¶ 40. After consideration, we find no error, let alone any obvious error demonstrating prejudice.
 {¶ 42} Turner was charged with violations of the following statutes: R.C. 2907.321(A)(1) and (3); R.C. 2907.322(A)(1); and R.C. 2907.05(A)(4). R.C. 2907.321 states, in pertinent part, that:
 {¶ 43} "(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:
 {¶ 44} "(1) Create, reproduce, or publish any obscene material that has a minor as one of its participants or portrayed observers;
 {¶ 45} "* * *
 {¶ 46} "(3) Create, direct, or produce an obscene performance that has a minor as one of its participants * * *."
 {¶ 47} The State contends that no mens rea statement had to be inserted into the indictment because R.C. 2907.321, as well as R.C. 2907.322, contain the requirement that the defendant knew of the character of the performance at issue. This argument is correct, as far as it goes. However, R.C. 2907.321(A)(1) and (3) also impose strict liability, and, therefore, do not require a culpable state.
 {¶ 48} In discussing the mens rea required under R.C. 2907.321(A), the Ohio Supreme Court has said that "knowledge is a requirement only for the discrete clause *Page 13 
within which it resides: `with knowledge of the character of the material or performance involved.' Thus, the state must prove that appellee knew the character of the material at issue." State v.Maxwell, 95 Ohio St.3d 254, 258, 2002-Ohio-2121, 767 N.E.2d 242, at ¶ 29. However, the court also concluded in Maxwell that the remainder of R.C. 2907.321(A) imposes strict liability. In discussing R.C. 2907.321(A)(6), which was the particular division involved inMaxwell, the Ohio Supreme Court stressed that:
 {¶ 49} "a crime may have different degrees of mental culpability for different elements. The General Assembly has assumed a strong stance against sex-related acts involving minors, as evidenced by the numerous statutes in the Ohio Revised Code providing for criminal liability for those acts. Therefore, it is reasonable to presume that the inclusion of a knowledge requirement regarding the character of the material and the absence of a mental element elsewhere in R.C. 2907.321 reflect legislative intent to impose strict liability for the act of bringing child pornography into the state of Ohio." Id. at ¶ 30.
 {¶ 50} In light of Maxwell, there was no error in the indictment in the present case. The element of "knowledge" is already contained in R.C. 2907.321(A)(1) and (3), and the rest of the alleged violations are based on strict liability, which requires no culpable state.
 {¶ 51} Likewise, R.C. 2907.322 contains a "knowledge" requirement in the first part of the statute, and imposes strict liability for the acts that are prohibited. Specifically, R.C. 2907.322, as relevant to the indictment in the present case, states that:
 {¶ 52} "(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:
 {¶ 53} "(1) Create, record, photograph, film, develop, reproduce, or publish any *Page 14 
material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality * * *."
 {¶ 54} Accordingly, the indictments charging violations of R.C. 2907.321(A)(1) and (3) and R.C. 2907.322(A)(1) did specify the required mens rea for these offenses and were not defective. The remaining indictments in the present case allege violations of R.C. 2907.05(A)(4). This statue states, in pertinent part, that:
 {¶ 55} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 {¶ 56} "* * *
 {¶ 57} "(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."
 {¶ 58} R.C. 2907.05(A)(4) does not specifically contain a mens rea statement. Consequently, Turner argues that the mens rea would be "recklessness," which should have been inserted in the indictment. We disagree.
 {¶ 59} Colon has been rejected in the context of R.C. 2907.05(A)(4) and other sexual offenses, because these statutes prohibit sexual contact, and incorporate a section of the Revised Code that imposes a degree of culpability. Specifically, R.C. 2907.01(B) defines "sexual contact" as any touching of erogenous zones of others "for the purpose of sexually arousing or gratifying either person." Courts have therefore, concluded that R.C. 2907.05(A)(4) requires a mens rea of "purposely," not recklessness. See Starcher v. Eberlin, Belmont App. No. 08 BE 19, 2008-Ohio-5042, at ¶ 16-17, and State v. Ralston, *Page 15 
Lorain App. No. 08CA009384, 2008-Ohio-6347, at ¶ 17. InRalston, the court noted that:
 {¶ 60} "The statutory language indicates that `purposely' applies to both the conduct and the result. * * * Thus, `a defendant is guilty of rape [or gross sexual imposition if] he purposely compels the victim to submit' to the sexual activity described by the statute." Id. (citation omitted).
 {¶ 61} We reached the same conclusion a number of years ago inState v. Mundy (1994), 99 Ohio App.3d 275, 287, 650 N.E.2d 502, where we observed that:
 {¶ 62} "Mundy argues, and the state concedes, that R.C. 2907.05(A)(4) does not impose strict liability. Although the language used in that provision fails to specify any culpability, the `sexual contact' that is an essential element of R.C. 2907.05(A)(4) is defined in R.C. 2907.01(B) as the touching of certain described parts of the human body for the purpose of sexually arousing or gratifying either the offender or the victim. Thus, the culpable mental state required for a conviction of R.C. 2907.05(A)(4) is supplied by the statutory definition of `sexual contact' in R.C. 2907.01(B). In other words, in proving the violations of R.C. 2907.05(A)(4) in this case, it was incumbent upon the state to prove not only that Thomas Mundy touched a person less than thirteen years of age or caused a person under age thirteen to touch him on the proscribed parts of the body listed in R.C. 2907.01(B), including the genitals and in the case of a female the breasts, but also that Mundy committed these acts for the specific purpose or intention of sexually arousing or gratifying either himself or the victim. * * *
 {¶ 63} "We believe that the conduct forbidden by R.C. 2907.05(A)(4) is readily comprehensible and understandable and that a person of ordinary intelligence would not have to guess as to its meaning."99 Ohio App.3d at 287. *Page 16 
 {¶ 64} The indictments charging violations of R.C. 2907.05(A)(4) did specify the required mens rea for these offenses and were not defective. Accordingly, since there was no error, let alone an obvious error affecting Turner's rights, the fourth assignment of error is overruled.
 VI {¶ 65} In the fifth assignment of error, Turner contends that all of his convictions must be reversed because the evidence was "insufficient to support a finding that Appellant engaged in sexual contact, or that the materials were obscene."
 {¶ 66} "A sufficiency-of-the-evidence argument challenges whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541. The proper test to apply to the inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492: `An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v.Cherry, 171 Ohio App.3d 375, 379, 2007-Ohio-2133, 870 N.E.2d 808,810-11, at ¶ 9.
 {¶ 67} The record indicates that after originally pleading no contest to all charges, Turner withdrew his plea and agreed to a bench trial. The parties presented the trial court *Page 17 
with stipulated facts, and the court also reviewed nine videos that formed the basis of the charges. After reviewing the evidence, the trial court found Turner guilty on all counts.
 {¶ 68} Turner contends that the videos are all similar and only show his eleven-year-old son naked and being spanked. Turner contends that the videos do not show what would normally be called "sexual activity," as there were no erections, Turner was always fully clothed, and there was no extraneous touching, other than one occasion on which Turner rubbed baby oil on his son's buttocks prior to the spanking. The videos also did not focus on the son's genitalia — they simply recorded the spankings. As a result, Turner argues that the evidence does not demonstrate that the videos were obscene or that they depicted sexual acts. Turner also contends that the definition of obscenity is amorphous, and that while many disapprove of corporal punishment, spanking a child is not typically considered an obscene or sexual act.
 {¶ 69} As a preliminary point, we reject the contention that Ohio's definition of "obscene" is amorphous. R.C. 2907.01(F) defines "obscene" as follows:
 {¶ 70} "When considered as a whole, and judged with reference to ordinary adults or, if it is designed for sexual deviates or other specially susceptible group, judged with reference to that group, any material or performance is `obscene' if any of the following apply:
 {¶ 71} "(1) Its dominant appeal is to prurient interest;
 {¶ 72} "(2) Its dominant tendency is to arouse lust by displaying or depicting sexual activity, masturbation, sexual excitement, or nudity in a way that tends to represent human beings as mere objects of sexual appetite;
 {¶ 73} "(3) Its dominant tendency is to arouse lust by displaying or depicting *Page 18 
bestiality or extreme or bizarre violence, cruelty, or brutality;
 {¶ 74} "(4) Its dominant tendency is to appeal to scatological interest by displaying or depicting human bodily functions of elimination in a way that inspires disgust or revulsion in persons with ordinary sensibilities, without serving any genuine scientific, educational, sociological, moral, or artistic purpose;
 {¶ 75} "(5) It contains a series of displays or descriptions of sexual activity, masturbation, sexual excitement, nudity, bestiality, extreme or bizarre violence, cruelty, or brutality, or human bodily functions of elimination, the cumulative effect of which is a dominant tendency to appeal to prurient or scatological interest, when the appeal to such an interest is primarily for its own sake or for commercial exploitation, rather than primarily for a genuine scientific, educational, sociological, moral, or artistic purpose."
 {¶ 76} The above definition has been upheld and applied for many years. See, e.g., State v. Burgun (1978), 56 Ohio St.2d 354, 361,384 N.E.2d 255 (finding that R.C. 2907.01(F) is not vague, and "is extremely precise in defining what conduct is prohibited").
 {¶ 77} In Burgun, the Ohio Supreme Court stated that R.C. 2907.01(F) "is neither unconstitutionally overbroad nor void for vagueness when it is read in pari materia with"
 {¶ 78} Miller v. California (1973), 413 U.S. 15, 93 S.Ct. 2607,37 L.Ed.2d 419. Burgun, 56 Ohio St.2d at 361. Burgun also incorporatedMiller's three-pronged inquiry into R.C. 2907.01(F). Id. The three-prong inquiry states that:
 {¶ 79} "The basic guidelines for the trier of fact must be: (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest * * *; (b) whether the work depicts or describes in a patently offensive way, sexual conduct specifically defined by the applicable state law; and *Page 19 
(c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. * * * If a state law that regulates obscene material is thus limited, as written or construed, the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary.'" Id. at 258-59 (citations omitted in original).
 {¶ 80} In view of the preceding discussion, R.C. 2907.01(F) is neither vague nor amorphous. We also reject Turner's evidentiary claim, because our review of the evidence indicates that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 {¶ 81} In finding the videos obscene, the trial court employed the criteria outlined in R.C. 2907.01(F) and Miller. The trial court concluded that the videos had a tendency to arouse lust, involved minors, were patently offensive, and lacked any scientific, literary, artistic, or political value. The trial court also concluded that the sexual nature of the videos was the only reason for taking videos of the events. We agree with the trial court's evidentiary findings and conclusions. Accordingly, Turner's fifth assignment of error is overruled.
 VI {¶ 82} All of Turner's assignments of error having been overruled, the judgment of the trial court is affirmed.
FAIN, J. and DONOVAN, J., concur.
[1] There was some confusion at the suppression hearing over the terms "hard drive" and "computer tower." The trial court found that the officers referred to these items interchangeably, and the transcript indicates that this was the case. *Page 1