[Cite as *State v. Montalvo*, 2018-Ohio-3142.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. John W. Wise, P. J. |
| Plaintiff-Appellee | Hon. W. Scott Gwin, J. |
| | Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 17 CA 000019 |
| PEDRO MONTALVO, JR. | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common Pleas, Case No.  15 CR11 0192


JUDGMENT:      Affirmed


DATE OF JUDGMENT ENTRY:      August 6, 2018


APPEARANCES:

For Plaintiff-Appellee

CHARLES T. MCCONVILLE
PROSECUTING ATTORNEY
117 East High Street, Suite 234
Mount Vernon, Ohio  43050

For Defendant-Appellant

JARED C. ROBERTS
ONDREY & ROBERTS, LLC
6487 Ridge Road
Wadsworth, Ohio  44281

*Wise, P. J.*

**{¶1}** Defendant-Appellant Pedro Montalvo, Jr., appeals his conviction on eighteen (18) counts of pandering sexually oriented matter involving a minor, following a jury trial in the Knox County Common Pleas Court.

**{¶2}** Appellee is the State of Ohio.

<u>STATEMENT OF THE FACTS AND CASE</u>

**{¶3}** The relevant procedural facts leading to this appeal are as follows.

**{¶4}** The investigation into Appellant Pedro Montalvo began on October 3, 2014, when Detective Rick Steller was checking law enforcement software which had downloaded child pornography from a computer in Mount Vernon, Ohio. (T. at 134). Det. Steller is a member of the Grove City Police Department, assigned to the Franklin County Internet Crimes Against Children (ICAC) Task Force. (T. at 127-128). The file downloaded on October 3, 2014, was titled "Sally 4YO to 8yo.rnpg." (T. at 141). Det. Steller testified at trial that he determined by viewing the file that it contained child pornography. (T. 136).

**{¶5}** Detective Steller determined the Internet Protocol address from which the file had been downloaded, which was IP 184.57.52.51. (T. at 136). He also determined based upon a Google search that the IP address was owned by Time Warner Cable. (T. at 137). Based upon that knowledge, Det. Steller obtained a subpoena from the Franklin County Municipal Court for the subscriber information related to the IP address. (T. at 136). Time Warner's response indicated that the subscriber for IP 184.57.52.51 was Pedro Montalvo, located in Mount Vernon. (T. at 138). The response also indicated that the Pedro Montalvo's address was 308 West Vine Street in Mount Vernon, and that there

were two phone numbers associated with Montalvo's account: (740) 358-5861 and (740) 358-0000. (T. at 153-154).

{¶6} Mount Vernon Police Det. Sgt. Beth Marti testified that she was contacted by Det. Bumpus of the ICAC task force, who provided her with information about the initial investigation. (T. at 157-158). This information included Montalvo's name, address, IP address, internet service provider, and telephone number. (T. at 158-159). She investigated the home address and found that Montalvo had a vehicle registered to him at the address, and that he had been registered to vote there since 2011. (T. at 159-160). Det. Bumpus also provided Det. Marti with a copy of the downloaded file of child pornography, which she viewed so that she could testify to its content. (T. at 160). Based upon that information, Det. Marti obtained a search warrant from the Mount Vernon Municipal Court. (T.at 161).

{¶7} Det. Marti was part of the law enforcement team that executed the warrant, a team that also included Det. Bumpus and Special Agent Cameron Bryant of Homeland Security. (T. at 162). When the warrant was executed, there were three people present at the residence: Robert and Wendy Bowden, and a female named White Dove. (T. at 163). Those persons identified Pedro Montalvo's bedroom, wherein they located two computers. (T. at 163, 166).

{¶8} Det. Marti testified that she informed the resident the officers were there on a child pornography investigation. (T. at 168). Resident Robert Bowden emphatically denied looking at child pornography, and· provided the detectives with his cell phone and laptop computer. These devices were examined and found to contain no child pornography. (T. at 168).

**{¶9}** Detective Marti was the only witness who personally met Pedro Montalvo. She identified Montalvo based upon viewing his picture on law enforcement databases and meeting with him at the Knox County Jail. (T. at 169). In the course of that testimony, Det. Marti stated that Montalvo declined to make a statement. (T. at 169). This is the only reference to his silence in the record. *(See* Transcript). No objection was raised to this testimony. (T. at 169). Det. Marti then proceeded to identify the Defendant in open court. (T. at 169).

**{¶10}** Special Agent Cameron Bryant of Homeland Security Investigations also participated in the execution of the search warrant at 308 W. Vine Street in Mount Vernon on November 12, 2014. (T. at 177, 179). His role was to examine the computers for evidence of child pornography. (T. at 182). When he examined the HP Desktop computer belonging to Pedro Montalvo, he recovered over 600 images of child pornography, 70 + digital movies containing child pornography and 197 images or videos that depicted known victims of child pornography investigations. (T. at 190). There was no argument that the child pornography files charged in the indictment were found on Appellant's computer. The State of Ohio and Appellant stipulated to the dates, titles, and the content of the files containing images of minors engaged in sexual activity. (T. at 194).

**{¶11}** As to the computer itself, Agent Bryant testified that the HP desktop computer was password protected. (T. at 196). The computer also contained a file sharing program called Frostwire. (T. at 199).

**{¶12}** Special Agent Bryant testified that while he never met Pedro Montalvo during his investigation, he did leave several messages on Montalvo's phone. (T. at 196). Agent Bryant stated that he received a return call from (740) 358-5861 at 8:42 p.m. on

November 17, 2014, while at home. (T. at 197). The caller identified himself as Pedro Montalvo. *Id.* He acknowledged receiving Bryant's messages and stated that he learned that he had been indicted. (T. at 197). He also stated that he was an over-the-road truck driver and was in Wisconsin. (T. at 198). He admitted to having child pornography on his home computer and that he used Frostwire and BitTorrent to download child pornography. (T. at 198-199). He stated he used computer search terms including PTHC (preteen hard core), PTSC (preteen soft core), 09YO for nine year old, 08YO, 05YO and 0YO. (T. at 199). He further stated that when he used 0YO, he received videos of adult men engaging in sexual conduct with babies. (T. at 199).

{¶13} On November 17, 2014, the Knox County Grand Jury indicted Pedro Montalvo, Jr. on one count of Pandering Sexually Oriented Material Involving a Minor in violation of R.C. § 2907.322(A)(2), a felony of the second degree. (*See* Indictment, Case No. 14CR11-0185). The matter was set for a change of plea on May 19, 2015, but subsequently reset for trial after a substitution of counsel on May 28, 2015.

{¶14} The State of Ohio moved to dismiss the case without prejudice on August 26, 2015 and the motion was granted on August 27, 2015.

{¶15} On November 3, 2015, the Knox County Grand Jury re-indicted Pedro Montalvo, Jr. in Case No. 15CR11-019. The indictment included 18 counts. Count One was a charge of Pandering Sexually Oriented Material Involving a Minor in violation of R.C. §2907.322(A)(2), a felony of the second degree. Counts Two through Eighteen were all charges of Pandering Sexually Oriented Material Involving a Minor in violation of R.C. §2907.322(A)(5), felonies of the fourth degree. (*See* Indictment, Case No. 15CR11-0192).

**{¶16}** Other than discovery motions and a motion for a bill of particulars, there were no pre-trial motions filed by Appellant before the case proceeded to trial on November 1-2, 2016.

**{¶17}** On November 2, 2016, following deliberations after the conclusion of all evidence, the jury found Appellant guilty on all counts.

**{¶18}** On December 16, 2016, the trial court sentenced Appellant to serve seven (7) years of imprisonment on Count One and seventeen (17) months imprisonment on each count for Counts Two through Eighteen. These sentences were ordered to run concurrently. (Sent. Entry, Dec. 20, 2016).

**{¶19}** Appellant now appeals, raising the following Assignments of Error:

ASSIGNMENTS OF ERROR

**{¶20}** "I. THE TRIAL COURT ERRED AND VIOLATED APPELLANT MONTALVO'S CONSTITUTIONAL RIGHT TO A COMPLETE, MEANINGFUL DEFENSE WHEREIN THE TRIAL COURT REFUSED TO ADMIT EVIDENCE THAT MR. MONTALVO'S ROOMMATE HAD RECEIVED CHILD PORNOGRAPHIC MATERIALS.

**{¶21}** "II. THE TRIAL COURT IMPERMISSIBLY ALLOWED TESTIMONY REGARDING A PURPORTED TELEPHONE CONVERSATION WITH APPELLANT MONTALVO WHEREIN: (A) THE INTRODUCTION OF THIS TESTIMONY WAS A CLEAR VIOLATION OF THE MASSIAH RULE RESULTING IN A VIOLATION OF APPELLANT MONTALVO'S CONSTITUTIONAL RIGHT TO COUNSEL; (B) THE PURPORTED TELEPHONE CALL LACKED THE NECESSARY INDICIA OF RELIABILITY REQUIRED FOR THE INTRODUCTION OF THIS EVIDENCE AND WAS INADMISSIBLE HEARSAY.

**{¶22}** "III. APPELLANT MONTALVO'S CONSTITUTIONAL RIGHT TO REMAIN SILENT WAS VIOLATED WHEREAS THE PROSECUTION ASKED QUESTIONS DESIGNED TO ELICIT TESTIMONY ABOUT HIS INVOCATION OF HIS CONSTITUTIONAL RIGHT TO REMAIN SILENT.

**{¶23}** "IV. R.C. § 2907.322 IS UNCONSTITUTIONALLY VAGUE AS IT DOES NOT CONTAIN ANY SCIENTER REQUIREMENT FOR THE DISSEMINATION OF PORNOGRAPHIC MATERIAL."

**I.**

**{¶24}** In his first Assignment of Error, Appellant argues the trial court erred in excluding evidence that Appellant's roommate had received child pornographic materials. We disagree.

**{¶25}** Appellant herein argues that he should have been allowed to present testimony by the landlord that she received an envelope which contained a printed catalogue of child pornography addressed to Appellant's roommate, Robert Bowden. A proffer was made that she would have testified that when Mr. Bowden never returned to the apartment to collect his mail, she opened the envelope and saw the catalogue and its contents. (T. at 228-233).

**{¶26}** Initially, we note the admission or exclusion of relevant evidence rests in the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 180, 510 N.E.2d 343. As a general rule, all relevant evidence is admissible. Evid.R. 402; cf. Evid.R. 802. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Wilmington Steel Products, Inc. v. Cleveland Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 122, 573

N.E.2d 622, 624. Absent an abuse of discretion resulting in material prejudice to the defendant, a reviewing court should be reluctant to interfere with a trial court's decision in this regard. *State v. Sage* (1987), 31 Ohio St.3d 173, 180.

**{¶27}** The trial court refused to allow this line of questioning under the "best evidence rule".

Evid.R. 1002 provides, "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio." Evid.R. 1004 provides exceptions to the requirement of the admission of the original writing, recording or photograph.

The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if:

(1) Originals lost or destroyed. All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; or

\*\*\*

**{¶28}** Here, the best evidence would have been the envelope with its contents. However, the landlord testified that she destroyed the envelope and its contents. (T. at 229). Appellant argues that the original was not required in this case because, although it was destroyed by the landlord, she did not do so in bad faith

**{¶29}** Upon review, we find that while the package may have been admissible under the best evidence rule, the exclusion of same was harmless error. The proffered testimony was that a plain white envelope, with no return address, containing a catalogue

of pornographic videos, which included child pornographic materials, was addressed and mailed to Robert Bowen, but never received by Robert Bowen, sometime after he moved out of the apartment in May, 2015. We do find that the exclusion of testimony as to what an unidentified person may have sent to Appellant's roommate after the time period of the investigation and resulting charges in this matter materially prejudiced Appellant. We do not find, based on the other evidence presented at trial, that the outcome of the proceedings would have been different.

{¶30} Appellant's first assignment of error is overruled.

## II.

{¶31} In his second Assignment of Error, Appellant argues the trial court erred in allowing into evidence testimony regarding a telephone conversation with Appellant. We disagree.

{¶32} Appellant argues herein that the trial court should not have allowed Special Agent Bryant to testify that he received a return telephone call from Appellant during which Appellant admitted to the allegations as charged in the indictment. Appellant argues that introduction of such evidence violated his Sixth Amendment right to counsel as set forth in *Massiah v. United States*, 377 U.S. 201, 8 S.Ct. 1199 (1964).

{¶33} "The Sixth Amendment right to counsel is triggered 'at or after the time that judicial proceedings have been initiated * * * whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' " *Fellers v. United States*, 540 U.S. 519, 523, 124 S.Ct. 1019 (2004), quoting *Brewer v. Williams*, 430 U.S. 387, 398, 97 S.Ct. 1232 (1977). The United States Supreme Court has held that "an accused is denied 'the basic protections' of the Sixth Amendment 'when there [is] used against him at his trial evidence

of his own incriminating words, which * * * agents * * * deliberately elicited from him after he had been indicted and in the absence of his counsel.' " *Fellers* at 523, quoting *Massiah v. United States*, 377 U.S. 201, 206, 84 S.Ct. 1199 (1964). The United States Supreme Court has also held that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Michigan v. Jackson*, 475 U.S. 625, 636, 106 S.Ct. 1404 (1986).

**{¶34}** "[T]he Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent." *Montejo v. Louisiana*, 556 U.S. 778, 786, 129 S.Ct. 2079, 2085 (2009). A defendant may waive his Sixth Amendment right to counsel regardless of whether he is already represented by counsel, and the decision to waive "need not itself be counseled." *Id.* In turn, "[n]othing in the Sixth Amendment prevents a suspect charged with a crime and represented by counsel from voluntarily choosing, on his own, to speak with police in the absence of an attorney." *Michigan v. Harvey*, 494 U.S. 344, 352, 110 S.Ct. 1176 (1990). Therefore, "[a]lthough a defendant may sometimes later regret his decision to speak with police, the Sixth Amendment does not disable a criminal defendant from exercising his free will." *Id.* at 353.

**{¶35}** Here, after a thorough review of the record, we find it is clear that Appellant initiated the conversation with Special Agent Bryant when he returned the telephone call, thus indicating Appellant's statements to Agent Bryant were voluntary and admissible against him at trial.

**{¶36}** Appellant, however, argues his purported statements should have been excluded because he did not explicitly waive his Sixth Amendment right to counsel knowingly and intelligently before speaking to Agent Bryant on the day in question. In support of this claim, Appellant argues that the prosecution failed to present evidence that Agent Bryant gave Appellant any *Miranda* warnings.

**{¶37}** The sole remedy for a *Miranda* violation is the suppression of the evidence which was derived from the violation. *Bennett v. Passic* (C.A.10, 1976), 545 F.2d 1260, 1263; *see Miranda, supra,* 384 U.S. at 479. A criminal defendant is required to raise a *Miranda* violation in a pretrial motion to suppress. *State v. Cornely* (1978), 56 Ohio St.2d 1, 6. By failing to file a motion to suppress before trial, Appellant waived any *Miranda* error relating to the failure to suppress his conversation with Agent Bryant. *See State v. Moody* (1978), 55 Ohio St.2d 64, 66; *State v. Sibert* (1994), 98 Ohio App.3d 412, 429.

**{¶38}** Appellant also argues that the telephone call lacked the necessary indicia of reliability required to be admissible. The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 510 N.E.2d 343. Therefore, we will not disturb a trial court's evidentiary ruling unless we find said ruling to be an abuse of discretion; i.e. unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.

**{¶39}** As a condition precedent to admissibility, Evid.R. 901(A) requires authentication by "evidence sufficient to support a finding that the matter in question is what its proponent claims." This is a low threshold, "requiring only foundational evidence for the trier of fact to conclude that the evidence is indeed what the proponent claims it to

be." (Citations omitted.) *State v. Dawson*, 2d Dist. Greene No. 2009–CA–63, 2010–Ohio–3904, ¶ 13. "The testimony of a witness with knowledge is sufficient authentication." *Id.*, citing Evid.R. 901(B)(1).

**{¶40}** Evid.R. 901(B) (6) provides the following as an illustration of authentication or identification conforming with the requirements of this rule:

> (6) *Telephone Conversations.* Telephone conversations, by evidence that a call was made to the number assigned at the time by the telephone company to a particular person or business, if (a) in the case of a person, circumstances, including self-identification, show the person answering to be the one called, or (b) in the case of a business, the call was made to a place of business and the conversation related to business reasonably transacted over the telephone.

**{¶41}** "Rule 901(B)(4) contemplates that a caller may be identified by the fact that the speech could only have been uttered by him, under the circumstances. 'A letter or a voice over the telephone may be related to a particular person by the very fact that the matters set forth in the letter or the telephone conversation were known peculiarly to a particular person.' " *Id.*, quoting 1980 Staff Note, Evid.R. 901.

**{¶42}** Courts have also held that " '[t]elephone conversations are admitted where the identity of the parties is "satisfactorily explained." ' " *State v. Carr–Poindexter*, 2d Dist. Montgomery No. 20197, 2005–Ohio–1571, ¶ 24, quoting *State v. Williams*, 64 Ohio App.2d 271, 274, 413 N.E.2d 1212 (8th Dist.1979). In *Carr–Poindexter*, we stressed that such testimony is properly admitted " 'where there is a reasonable showing, through testimony or other evidence, that the witness placed or received a call as alleged, plus some indication of the identity of the person spoken to. "There is no fixed identification

requirement for all calls." * * * "Each case has its own set of facts." ' " *Id.*, quoting *State v. Vrona*, 47 Ohio App.3d 145, 149, 547 N.E.2d 1189 (9th Dist.1988). These facts may be established through either direct or circumstantial evidence. *Id.*, citing *Williams* at 274.

**{¶43}** Here, the call received by Agent Bryant was initiated by Appellant. The call initiated from the number associated with Appellant. (T. at 197). The caller identified himself as Appellant Pedro Montalvo. *Id.* The caller acknowledged receiving Agent Bryant's messages. *Id.* The caller also stated that he had learned that he had just been indicted. *Id.* Agent Bryant testified that he had left messages on Appellant's phone and that Appellant had been indicted earlier that day. (T at 196). Additionally, the caller also identified himself as being an over-the-road truck driver. (T. at 198). Agent Bryant had learned during his investigation that Appellant was a truck driver. (T. at 197). The caller also admitted that he had child pornography on his home computer, and that he used Frostwire and BitTorrent to download such pornography. (T. at 190, 198). Agent Bryant testified that Appellant's computer contained hundreds of files containing child pornography, and that the Frostwire program was also on Appellant's computer. (T. at 198-199). Finally, the caller told Agent Bryant what preferred search terms he used to find the child pornography, and most of the files found on Appellant's computer contained those search terms. (T. at 199).

**{¶44}** Taking all of the evidence into consideration, we find no error. Specifically, the threshold test of authentication was met, and the jury could decide the weight to give the phone call. *See State v. Harmon*, 2d Dist. Clark No. 2932, 1993 WL 55967, (Mar. 2, 1993) (jury decides "how authentic an item of evidence is, and * * * [gives] it weight accordingly"); *State v. Isley*, 9th Dist. Summit No. 17485, 1996 WL 351154, *2 (June 26,

1996) (once judge decides " 'threshold test of authentication has been met and submits the evidence to the jury, the jury may reject the authenticity of the evidence' "); *State v. Taylor*, 2d Dist. Miami No. 2005 CA 44, 2006–Ohio–6813, ¶ 30 (once court decides to admit evidence, weight to be given is for trier of fact).

**{¶45}** As noted above, the threshold for authenticating evidence is low and only requires "sufficient foundational evidence * * *." (Citation omitted). *State v. Young*, 2d Dist. Montgomery No. 18874, 2002 WL 471846, *2 (Mar. 29, 2002). *See also State v. Moore*, 2015–Ohio–1327, 30 N.E.3d 988, ¶ 18 (2d Dist.).

**{¶46}** For the above reasons, we overrule Appellant's second assignment of error.

**III.**

**{¶47}** In his third Assignment of Error, Appellant argues that his constitutional right to remain silent was violated. We disagree.

**{¶48}** At trial, during her testimony, Detective Marti stated that she advised Appellant of his Miranda rights at the Knox County jail and that he subsequently refused to make a statement. (T. at 169). No objection was made to this testimony.

**{¶49}** Although this statement was not objected to in the trial court, Appellant contends that such amounts to plain error and the trial court's failure to uphold his constitutional right to remain silent constitutes reversible error.

**{¶50}** Although a court will not generally consider alleged errors that were not brought to the attention of the trial court, Crim.R. 52(b) provides that the court may consider such errors affecting substantial rights. An alleged error constitutes plain error only if the error is obvious and, but for the error, the outcome of the trial clearly would

have been different. *State v. Yarbrough,* 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 108.

**{¶51}** Evidence submitted by the State regarding a defendant's exercise of his right to remain silent during an interrogation violates the Due Process Clause of both the state and federal constitutions. *Doyle v. Ohio* (1976), 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91; *State v. Leach,* 102 Ohio St.3d 135, 807 N.E.2d 335, 2004-Ohio-2147, ¶ 18. Nevertheless, the introduction of evidence regarding a defendant's decision to remain silent does not constitute reversible error if, based on the whole record, the evidence was harmless beyond any reasonable doubt. *State v. Zimmerman* (1985), 18 Ohio St.3d 43, 45, 479 N.E.2d 862. The Ohio Supreme Court has held that "[a] single comment by a police officer as to a suspect's silence without any suggestion that the jury infer guilt from the silence constitutes harmless error." *State v. Treesh,* 90 Ohio St.3d 460, 2001-Ohio-4, 739 N.E.2d 749; *State v. Welch,* 3d Dist. No. 16-06-02, 2006-Ohio-6684, ¶ 10.

**{¶52}** Based on the specific facts before us, including the overwhelming evidence of Appellant's guilt of the crimes, we do not find that the outcome of the trial would have been different but for said error.

**{¶53}** Appellant's third assignment of error is overruled.

**IV**.

**{¶54}** In his fourth Assignment of Error, Appellant argues R.C. §2907.322 is unconstitutionally vague. We disagree.

**{¶55}** Appellant argues that the statute is unconstitutionally vague because it does not include a scienter requirement for dissemination of illicit materials.

**{¶56}** When a statute is challenged under the void-for-vagueness doctrine, "the court must determine whether the enactment (1) provides sufficient notice of its proscriptions to facilitate compliance by persons of ordinary intelligence and (2) is specific enough to prevent official arbitrariness or discrimination in its enforcement." *Norwood v. Horney,* 110 Ohio St.3d 353, 2006–Ohio–3799, ¶ 84, citing *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855 (1983)

**{¶57}** Upon review, we find that R.C. §2907.322 contains a "knowledge" requirement in the first part of the statute, and imposes strict liability for the acts that are prohibited. Specifically, R.C. §2907.322, as relevant to the indictment in the present case, states that:

**{¶58}** "(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:

**{¶59}** "(1) Create, record, photograph, film, develop, reproduce, or publish any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality * * *."

**{¶60}** In a prosecution under R.C. §2907.322, the trier of fact may "infer that a person in the material or performance involved is a minor if the material or performance, through its title, text, visual representation, or otherwise, represents or depicts the person as a minor." R.C. §2907.322(B)(3).

**{¶61}** In the instant case, Appellant argues that there is a possibility that a person could unknowingly share information with other parties through "peer to peer" computer networks.  (Appellant's brief at 24.)

**{¶62}** R.C. §2907.322 makes clear that "its prohibitions apply to pornography depicting an actual minor." *State v. Huffman,* 165 Ohio App.3d 518, 2006–Ohio–1106, ¶ 31 (1st Dist.). It "leaves no discretion for the application and enforcement of the statute, describing with sufficient particularity what a person must do to commit a violation." *Id.*

**{¶63}** The *Huffman* court determined the scienter requirement in R.C. 2907.322, requiring a defendant to have "knowledge of the character of the material or performance involved," eliminated any potential vagueness claim. *Id.* at ¶ 33. *See also State v. Kraft,* 1st Dist. No. C–060238, 2007–Ohio–2247, ¶ 44–45, quoting *Mishkin v. New York,* 383 U.S. 502, 512, 86 S.Ct. 958 (1966) (concluding the scienter requirement in R.C. 2907.322 "requires evidence that the offender knew that the image involved a real minor," thus demonstrating that "the focus of the statute is on the 'calculated purvey[or]' of child pornography").

**{¶64}** In *State v. Maxwell,* 95 Ohio St.3d 254, 2002-Ohio-2121, 767 N.E.2d 242, the Ohio Supreme Court held that the General Assembly plainly indicated a purpose to impose strict liability when it explicitly set forth a mental state in one part of a statutory section defining a criminal offense, but not in another. In *Maxwell,* a defendant who had downloaded obscene images involving minors onto his computer argued that although he knew that the images were obscene and involved minors, he did not know that he was downloading them from a computer system in another state, which resulted in his importing the images into Ohio. The court held that based upon the language in the statute, the knowledge element of R.C. §2907.321(A) applied only to "the character of the material or performance involved," and the absence of any knowledge requirement relating to actual importing of the material evidenced a plain intention to impose strict

liability for that act. *Id.* at ¶30. This interpretation was supported by the General Assembly's demonstrated history of assuming a "strong stance" against sex-related acts involving minors. *Id.*

**{¶65}** In *State v. Turner*, 2nd District, Montgomery No. 22777, 2008-Ohio-6836, the court examined both R.C. §2907.321 (Pandering Obscenity Involving a Minor) as well as R.C. §2907.322, the statute involved in the case *sub judice.* The *Turner* court, in looking at the scienter, or *mens rea*, element required, found that the knowledge requirement applied to the character of the material involved and that remainder of the statute imposes strict liability.

**{¶66}** Upon review, we find Appellant's argument that R.C. §2907.322 is unconstitutionally vague lacks merit.

**{¶67}** Appellant's fourth assignment of error is overruled.

**{¶68}** For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Knox County, Ohio, is affirmed.

By: Wise, P. J.

Gwin, J., and

Delaney, J., concur.

JWW/d 0717